FILED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

04 APR 30 PM 3: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

CHESTER and REBECCA
BROWDER, et. al., on behalf of
themselves and all others similarly
situated,

        Plaintiffs,

v.

H&R BLOCK, INC., et. al.

        Defendants.

}
}
}
}
}
}
}
}
}
}

Case No.:  CV 00-P-0644-NE

ENTERED
APR 3 0 2004

## MEMORANDUM OPINION

At the parties' request, the court held a status conference in this action on February 5, 2004, during which Plaintiffs' counsel raised questions about whether this court has subject matter jurisdiction over this case and the purported class allegations in it. Of course, this court has a continuing duty to ensure that it has subject matter jurisdiction over the cases before it. When a party questions whether jurisdiction exists, it is a particularly appropriate occasion for the court to examine the issue.

Accordingly, the court ordered the parties to submit briefs addressing federal question and diversity jurisdiction in this case. (Doc. # 77). On February 27, 2004, the parties submitted initial briefs. (Docs. # 78, 79). Plaintiffs' brief included a request to amend their complaint to add a violation of 18 U.S.C. § 1961, *et seq.*, the Racketeer Influenced and Corrupt Organizations Act ("RICO"). (Doc. # 79). On March 9, 2004, Plaintiffs submitted a reply brief (Doc. # 81) and Defendants submitted an opposition to Plaintiffs' request to amend. (Doc. # 80).

The law is clear that the party seeking to invoke jurisdiction, in this case the Plaintiffs



because the case was originally filed in this court, has the burden to demonstrate that the court has subject matter jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 182-83 (1936). Lack of subject matter jurisdiction cannot be waived nor expanded by judicial interpretation, and a jurisdictional defect can be raised at any time by either the parties or the court. *Sosna v. Iowa*, 419 U.S. 393, 398 (1975); *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17-18 (1951).

For the reasons stated below, the court finds that it lacks subject matter jurisdiction over the claims in this case because it possesses neither federal question nor diversity jurisdiction.

## I.     Overview

Defendants H&R Block, Inc.; H&R Block Group, Inc.; H&R Block Tax Services, Inc.; and H&R Block Eastern Tax Services, Inc. (hereinafter referred to collectively as "Block") are in the business of providing income tax preparation services to taxpayers throughout the United States. Block provides to its customers, at no additional charge, a Guarantee Certificate (the "Guarantee") regarding the accuracy of its tax preparation services. The Guarantee provides that, if Block makes an error in the preparation of a tax return, Block will prepare an amended return and pay any interest and penalties which may be due, although they will not pay any additional taxes which may be due. The Guarantee also promises that Block will appear at an audit with the taxpayer to explain how the taxpayer's return was prepared.

As a supplement to the Guarantee, Block offers its customers, typically for an additional fee, the Peace of Mind Program ("POM Program"). Through the POM Program, Block warrants the accuracy of its tax preparation services based upon the information provided by the customer and provides that, if Block makes an error in the preparation of a customer's tax return, in addition to the Guarantee's basic benefits, Block will pay any additional taxes due to federal, state or local

2

authorities up to a cumulative total of $4,000 or $5,000 (depending on the tax year).

On March 14, 2000, Plaintiffs Chester and Rebecca Browder brought this action, on behalf of themselves and all others similarly situated, challenging the making, performance, and legality of the Guarantee and POM Program. (Doc. # 1).  The complaint raises several claims, but Plaintiffs admit that only two of their claims seek declarations of federal law.  (Doc. # 79).  The remainder of the Plaintiffs' claims are founded in state law.  Plaintiffs summarize their claims as follows:

> (1) Count One seeks a declaration that Defendants have violated the Gramm-Leach-Bliley Act, 15 U.S.C. § 6701(b), by selling insurance without a proper license, and requests that the court enjoin such conduct.[1]
>
> (2) Count Two seeks a declaration that Defendants have violated 31 C.F.R. § 10.30(a)(1) by advertising or soliciting business with "a false, fraudulent, or coercive statement or claim; or a misleading or deceptive statement or claim," and requests that the court enjoin such conduct.[2]
>
> (3) Counts Three through Eight allege violations of state law based upon various tenets of Defendants' Guarantee and POM Program.[3]

---

[1] Plaintiffs describe Count One as an "umbrella" for the insurance licensing claims alleged on behalf of the nationwide class. (Doc. # 79, at 2).  Plaintiffs contend that the factual allegations that support Count One also support the state law claims outlined in Counts Seven and Eight which are alleged on behalf of *some* class members who reside in certain states.  (*Id.*).

[2] Plaintiffs again refer to Count Two as an "umbrella" for the nationwide class claims regarding the Guarantee and POM Program. (Doc. # 79, at 2).  Plaintiffs note that the factual allegations that support Count Two also support the state law claims found in Counts Three through Eight.  (*Id.*).

[3] Count Three alleges unjust enrichment and seeks damages for the portion of the Guarantee fee paid by Plaintiffs attributable to Defendants' promise to reimburse Plaintiffs for any interest and penalties on additional taxes assessed against them because of "any error" in the return.  Count Four alleges breach of contract of the Guarantee's promise to have a representative appear at the Plaintiffs' audit and explain how the tax return was prepared.  Count Five, a variation of Count Four, claims that such a breach of the Guarantee's promise is a material breach and thereby entitles Plaintiffs to damages in the total amount paid for tax preparation services. Count Six alleges breach of contract of the POM Program promise to reimburse Plaintiffs for additional taxes owed by them on a return prepared by Defendants.  Counts Seven and Eight, applicable to only some of the class members,

(Doc. # 79, at 2-3). The complaint based federal jurisdiction on 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), and 28 U.S.C. § 1367 (supplemental jurisdiction over the state law claims). (Docs. #1, 11, 60).

## II.    Federal Question Jurisdiction

Federal question jurisdiction is conferred by § 1331, which provides, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The "well-pleaded complaint rule" governs whether this court has federal question jurisdiction. *Caterpillar v. Williams*, 482 U.S. 386 (1987); *Gully v. First National Bank*, 299 U.S. 109 (1936); *Gulf States Paper Corporation v. Ingram*, 811 F.2d 1464 (11th Cir. 1987). Under § 1331, federal courts have jurisdiction to hear "only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 27-28 (1983). Although the "vast majority" of federal question cases contain a federal law that creates the plaintiff's cause of action, *see Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 808 (1986), federal question jurisdiction is not limited to those cases. There are some cases where, even though the federal law does not create the cause of action, the case depends on resolution of a federal question sufficiently *substantial* to "arise under" federal law. *Franchise Tax Bd.*, 463 U.S. at 27-28; *Smith v. Kansas City Title & Trust Co.*, 255 U.S. 180, 199 (1921) (federal jurisdiction exists when the right to relief "depends upon the construction or application" of federal law and the claim "is not merely

---

assert claims for unjust enrichment and allege that Defendants sold insurance without a proper license and therefore violated certain states' insurance licensing statutes and consumer protection/deceptive trade practices statutes.

colorable").

Thus, to sustain federal question jurisdiction in this case, the Plaintiffs must demonstrate either (1) that one or both of 15 U.S.C. § 6701(b) and 31 C.F.R. § 10.30(a)(1) create a cause of action, or (2) that resolution of this case depends on resolution of a *substantial* federal question. That Plaintiffs have sought a declaratory judgment from a federal court is not sufficient to satisfy their burden. In a case where declaratory action is sought, a court must determine whether "absent the availability of declaratory relief, the instant case could nonetheless have been brought in federal court." *Gulf States*, 811 F.2d at 1467.

Plaintiffs contend that this court has federal question jurisdiction because "the complaint shows on its face that in Counts One and Two the Plaintiffs seek a judicial declaration of their rights under both a federal statute and federal regulation, *and* seek injunctive relief to enforce those federally-created rights for themselves and a putative nationwide class." (Doc. # 79, at 5-6 (footnotes omitted)).[4]  Defendants maintain that the court lacks federal question jurisdiction, and argue that "Plaintiffs' counsel conceded at the February 5 hearing that neither [15 U.S.C. § 6701 (b) or 31 C.F.R. § 10.30(a)(1)] confers, either explicitly or implicitly, a private right of action." (Doc. # 78, at n. 1).[5]  Even if the court assumes that the statutes do not confer a private right of action, that does not end the inquiry because the case might still pose a substantial federal question such that federal

---

[4] Plaintiffs acknowledge that they have alleged more state law claims than federal issues but maintain that the federal claims are the "center of gravity" of the complaint. (Doc. # 79, at 6 n.5).

[5] Plaintiffs' reply brief maintains that, "[a]lthought it is true that Plaintiffs [sic] counsel stated that the federal statute and the federal regulation cited in the complaint do not expressly provide a private cause of action, Plaintiffs have *not* taken the position that there is no private cause of action implicit in those laws. Thus, Defendants have, to a degree, mischaracterized Plaintiffs' position." (Doc. # 81, at 1). This semantic debate is of no moment given that, as part of its analysis, the court *has examined* whether the federal laws cited by Plaintiffs confer a private right of action.

question jurisdiction would be proper. Accordingly, the court will consider first whether the relevant federal laws create a cause of action and then will address whether this case implicates a substantial federal question.

A.   **Is There a Private Cause of Action Under 15 U.S.C. § 6701 (b) or 31 C.F.R. § 10.30(a)(1)?**

As the Supreme Court stated in *Alexander v. Sandoval*, 532 U.S. 275 (2001), "like substantive federal law itself, private rights of actions to enforce federal law must be created by Congress." *Alexander*, 532 U.S. at 286; *see also Whitman v. American Trucking Assoc.*, 531 U.S. 457, 472 (2001) ("Article I, Section I of the Constitution best '[a]ll legislative Powers herein granted . . . in a Congress of the United States.' This text permits no delegation of those powers."). Without statutory intent to create not just a private right, but also a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander*, 532 U.S. at 286-87. Accordingly, the court's analysis must begin with the presumption that if a statute does not *expressly* create a private cause of action, one does not exist. *Id.* at 287. There is no question that Congress is well aware of this presumption and knows how to provide private remedies. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 572 (1979).

The blueprint for statutory analysis has been well-established. First, a court looks to the text and structure of a statute in order to determine if it unambiguously provides enforceable rights, *i.e.*, contains "rights creating language." *Thirty-One Foster Children v. Bush*, 329 F.3d 1255,1269 (11th Cir. 2003); *Jackson v. Birmingham Board of Education*, 309 F.3d 1333, 1339 (11th Cir. 2002). If the statute does not expressly create a private cause of action, the court reviews the "statutory

structure" within which the relevant legislative provision is found and then "inspects the legislative history in the context within which the statute was passed." *Jackson*, 309 F.3d at1339. When looking beyond the plain language of a statute, a court should examine the following factors: (1) whether the plaintiff is "one of the class for whose especial benefit the statute was enacted;" (2) whether there is "any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one;" (3) whether implication of a private remedy is consistent with the underlying purposes of the legislative scheme; and (4) whether the cause of action sought is "one traditionally relegated to state law." *Cort v. Ash*, 422 U.S. 66, 78 (1975) (internal quotations omitted).[6] If there is "no indication that Congress intends to create new individual rights, there is no basis for a private suit." *Thirty-One Foster Children*, 329 F.3d at 1269.[7]

Turning to the specific federal laws alleged by Plaintiffs in this case, it is clear that Congress did *not* intend 15 U.S.C. § 6701 (b) to confer a private right of action for Plaintiffs' alleged cause of action in this case-- "selling insurance without being properly licensed to do so." (Docs. #1, 11, 60, 79). The court begins its search for Congress' intent with the text of § 6701 (b): "No person shall engage in the business of insurance in a State . . . unless such person is licensed as required by the appropriate insurance regulator of such State." 15 U.S.C. § 6701 (b). Although the statute prohibits the unlicensed sale of insurance, the plain language does not contain "rights creating language," and

---

[6] Stated another way, "Congress must have intended that the provisions in question benefit the plaintiff," "the plaintiff must demonstrate that the right asserted protected by the statute is not so 'vague and amorphous' that its enforcement would strain judicial competence," and "the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms." *Gonzaga University v. Doe*, 536 U.S. 273, 282 (2002).

[7] It follows that if there is merely "some indication" that Congress may have intended to create individual rights or an indication that it did not intend to do so, the court must conclude that Congress has not spoken with the requisite "clear voice" needed to establish an enforceable right.

therefore the court must look to the structure and legislative history to ascertain Congressional intent.

Section 6701 (b) was enacted under the authority of the Gramm-Leach-Bliley Act, Pub. L. 106-102, and was given the "short title" of "Terrorism Risk Insurance Act of 2002." 2002 Amendments, Pub.L. 107-297, § 1(a), Nov. 26, 2002, 116 Stat. 2322. The stated purpose of § 6701 "is to establish a temporary Federal program that provides for a transparent system of shared public and private compensation for insured losses resulting from acts of terrorism." Pub.L. 107-297, § 101(b), Nov. 26, 2002, 116 Stat. 2322. According to the legislative history, Congress granted to the Secretary of the Treasury "the powers and authorities necessary to carry out the Program," Pub.L. 107-297, § 104(a), Nov. 26, 2002, 116 Stat. 2322, and provided for a "[f]ederal cause of action for property damage, personal injury or death arising out of or resulting from such act of terrorism [as defined and determined by the Secretary]." Pub.L. 107-297, § 107(a)(1), Nov. 26, 2002, 116 Stat. 2322. Although Congress may have intended for victims of terrorism to have a private right of action, there is no evidence of Congressional intent to create a cause of action for the unlicensed selling of insurance as alleged by Plaintiffs in this lawsuit.[8]

Plaintiffs also allege that Defendants have violated federal regulation 31 C.F.R. § 10.30(a)(1) "by advertising or soliciting business by making 'a false, fraudulent, or coercive statement or claim;

---

[8] Moreover, when looking to the Gramm-Leach-Bliley Act ("GLBA") as a whole, the court finds no Congressional intent to provide for a private right of action. Pub. L. No. 106-102, 113 Stat. 1338 (1999) (codified as amended in various sections of 12 U.S.C. and 15 U.S.C.); *accord Lacerte Software Corp. v. Professional Tax Servs., L.L.C.*, 2004 WL 180321, at *2 (N.D.Tex. Jan.6, 2004) (holding that the GLBA does not provide for a private right of action); *Borinski v. Williamson,* 2004 WL 433746 (N.D. Tex. Mar 1, 2004); *Menton v. Experian Corp.*, 2003 WL 21692820, at *3 (S.D.N.Y. July 21, 2003). In fact, 15 U.S.C. § 6805 of the GLBA provides that, "[t]his subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to the financial institutions and other persons subject to their jurisdiction." 15 U.S.C. § 6805.

.

or a misleading or deceptive statement or claim,'" (Doc. # 79 (citing § 10.30(a)(1)).  Although Plaintiffs argue that a "federal regulation is one of the 'laws of the United States,' as that phrase is used in § 1331," (Doc. # 79, at 5 n.4), it has long been the law of the Eleventh Circuit that interpretive regulations *standing alone* cannot create an enforceable federal right.  *See, e.g., Harris v. James*, 129 F.3d 993, 1009 (11th Cir. 1997).  Therefore, the court must look back to the enabling statute and, "if the regulation defines the content of a statutory provision that creates no federal right . . . or if the regulation goes beyond explicating the specific content of the statutory provision and imposes distinct obligations in order to further the broad objectives of the statutory provision, . . . the regulation is too far removed from Congressional intent to constitute a 'federal right' . . . ." *Harris*, 129 F.3d at 1009.

Although the parties failed to cite to the statutory authority by which § 10.30(a)(1) was enacted, the court notes that the particular provision upon which Plaintiffs rely is one of a broad scheme of regulations governing practice before the Internal Revenue Service and implemented under the authority of 31 U.S.C. § 330. *See* 57 FR 41093, *et. seq.*; 67 FR 48771, *et. seq.*  Section 330 does not provide a private right of action for violations of its provisions or implementing regulations.  Rather, it authorizes the Secretary of the Treasury to "suspend or disbar from practice before the Department a representative who . . . violates regulations prescribed under [the statute]." 31 U.S.C. § 330(b)(3).  In fact, even the regulation itself gives no indication that a private right of action was intended - - "[t]his rule relates solely to professional services in connection with Internal Revenue Service and Treasury Department proceedings."   57 FR 41095.  The court finds no evidence to support the existence of a private right of action under 31 U.S.C. § 330 and its implementing regulation, 31 C.F.R. § 10.30(a)(1).

9

There is no indication that Congress intended for either 15 U.S.C. § 6701 (b) or 31 C.F.R.

§ 10.30(a)(1) to authorize the causes of action asserted by Plaintiffs in this case, and therefore, the

court finds that federal question jurisdiction in this case cannot rest on a federally created cause of

action.   Nonetheless, that determination does not fully resolve the question of whether Plaintiffs'

claims establish federal question jurisdiction under § 1331.  *See Verizon Maryland, Inc. v. Public*

*Service Commission*, 535 U.S. 635, 642-43 (2002).  Federal question jurisdiction still can exist in

this case if resolution of the Plaintiffs' claims depends upon resolution of a federal question

sufficiently substantial to "arise under" federal law.

### B.   Does Disposition of Plaintiffs' Claims Depend upon Resolution of a *Substantial* Federal Question?

If "the right set up by [a] party may be defeated by one construction of the constitution or law

of the United States, and sustained by the opposite construction," federal jurisdiction exists.  *Osborn*

*v. Bank of United States*, 22 U.S. 738, 822 (1824) (Marshall, J.); *see also Gully v. First Nat'l Bank*,

299 U.S. 109, 112 (1936) (Cardozo, J.). For this limited situation to exist, however, the federal

interest must be "substantial." "[T]he mere presence of a federal issue in a state cause of action does

not automatically confer federal-question jurisdiction." *Merrell Dow*, 478 U.S. at 813.  Rather, the

court must ascertain whether the dispute is one that Congress intended federal courts to resolve.

Plaintiffs contend that the Court's decision in *Verizon Maryland, Inc. v. Public Service*

*Commission*, 535 U.S. 635 (2002), authorizes federal question jurisdiction in this case because the

Plaintiffs have "expressly [pled] the violation of a federal statute as the basis for a federal law claim

in federal court, [and therefore] it is *not* necessary that the federal law under which the claim arises

itself expressly create a cause of action." (Doc. # 79, at 7 (emphasis in original)).  Plaintiffs'

10

argument is wide of the mark.

Although federal question jurisdiction *can exist* in the absence of a valid federal cause of action, that has proven to be the case only in limited situations when resolution of the case turns on the construction of federal law.  As the Supreme Court stated, "the district court has jurisdiction if the right of the [plaintiffs] to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Verizon Maryland*, 535 U.S. at 643 (internal quotations and citations omitted). Plaintiffs' argument regarding the *Verizon Maryland* standard appears to go something like this:  If 15 U.S.C. § 6701 (b) and 31 C.F.R. § 10.30(a)(1) are construed one way (*i.e.*, to give rise to a cause of action) Plaintiffs will be entitled to recover on their claims, but if those federal laws are given another construction (*i.e.*, they do not give rise to a cause of action), Plaintiffs' claims will be defeated.  The argument is both circular and incorrect.  It is circular because Plaintiffs concede that the laws do not expressly give rise to a federal cause of action but then argue that there is a substantial federal question as to whether the language of those laws could be construed to do so.  It is incorrect because there is not a single claim asserted by Plaintiffs in their complaint that will rise or fall based upon a construction of either § 6701(b) or § 10.30(a)(1). *Compare Verizon Maryland*, 535 U.S. at 643 ("Here, resolution of [plaintiff's] claim turns on whether the [Federal Telecommunications] Act, or an FCC ruling issued thereunder, precludes the Commission from ordering payment of reciprocal compensation, and there is no suggestion that [plaintiff's] claim is 'immaterial' or 'wholly insubstantial and frivolous.'").[9]

_____

[9] The question of whether a case implicates a substantial federal question typically arises in the context of a state law claim that implicates a substantial federal question.  For example, if

11

In this case, Plaintiffs' claims center on allegations of selling insurance without a license, breach of contract, and deceptive marketing practices including advertising and solicitation-- questions that are typically left for the province of state law. The court has already determined that the claims in this case based on § 6701 (b) and § 10.30(a)(1) are "wholly insubstantial" given that neither statute gives rise to a cause of action like the ones asserted by Plaintiffs. Without a federal law to authorize their claims, resolution of Plaintiffs' claims requires the interpretation and application of state laws.[10] Therefore, Plaintiffs have not demonstrated a substantial federal issue to justify invocation of federal question jurisdiction under § 1331.[11]

Because Plaintiffs' well-pleaded complaint does not "establish[] either that federal law creates the cause of action or that [Plaintiffs'] right to relief necessarily depends on resolution of a substantial question of federal law," the court lacks federal question jurisdiction over the claims in this case. *Franchise Tax Bd.*, 463 U.S. at 27-28.

---

Plaintiffs in this case brought suit under an Alabama law which established a private remedy for violations of 15 U.S.C. § 6701 (b) or 31 C.F.R. § 10.30(a)(1), then a substantial federal issue might be present in this case because Plaintiffs' claims would rise or fall on the construction of § 6701 (b) or § 10.30(a)(1).

[10] Even § 6701(b) looks to state law to determine if a person is properly licensed to sell insurance "as required by the appropriate insurance regulator of such State." 15 U.S.C. § 6701 (b).

[11] Plaintiffs have indicated they "assert their right" under 28 U.S.C. § 1653 to replead their jurisdictional allegations "[i]f there [wa]s a failure to properly allege federal subject matter jurisdiction." (Doc. # 79, at 3 n.1). While amendments under § 1653 are liberally allowed, they are permitted in cases where a defective allegation limits the court's analysis and prevents the court from ascertaining whether federal question jurisdiction is proper. That is not the case here, where the jurisdictional deficiency of Plaintiffs' claims does not reside with defective allegations in their complaint, but with the very federal laws upon which they rely. Section 1653 does not permit a party to amend in order to assert new and different claims that bestow federal jurisdiction on the court.

### C.    Plaintiffs' Request to Amend the Complaint to Add a Federal Claim

During the February 5, 2004 status conference, the court indicated that it would not look favorably upon another request by Plaintiffs to amend their complaint. Nonetheless, Plaintiffs' February 27, 2004 brief addressing federal jurisdiction requests leave to add a RICO claim to their complaint. (Doc. # 79, at 12-13). This request- which comes almost four years after the filing of their initial complaint- is Plaintiffs' *fifth attempt* to state claims against the Defendants in this case.[12] Plaintiffs suggest that "[a] RICO claim would unquestionably present this Court with federal question jurisdiction, ending any possible doubt as to the Court's authority over this controversy." (Doc. # 79).

Rule 15(a) of the Federal Rules of Civil Procedure provides that, if a responsive pleading has been served: "a party may amend the party's pleading only by leave of court or by written consent of the adverse party . . . ." Fed. R. Civ. P. 15(a). When, as in the present case,

> the time period for amending a pleading as of right has expired, Rule 15(a) . . . permits amendment ". . . only by leave of court." Rule 15(a), however, limits the court's discretion by mandating that " leave shall be freely given when justice so requires." *See Halliburton & Assoc. v. Henderson, Few & Co.,* 774 F.2d 441, 443 (11th Cir. 1985). A substantial reason must exist to deny a motion to amend. *Id.; Moore v. Baker*, 989 F.2d 1129, 1131 (11th Cir. 1993)(holding that "a justifying reason must be apparent for denial of a motion to amend")(citation omitted). **Substantial reasons justifying a denial include "undue delay, bad faith, dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment."**

---

[12] Plaintiffs filed their initial complaint on March 13, 2000. (Doc. # 1). Plaintiffs filed their First Amended Complaint on May 26, 2000. (Doc. # 11). Plaintiffs moved for leave to file a second amended complaint on October 12, 2001, which was granted on October 15, 2001. (Docs. # 32, 33). In January 2003, the court allowed Plaintiffs another opportunity to amend, and they filed their Third Amended Complaint on February 10, 2003. (Doc. # 60).

> *Forman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L.Ed.2d
> 222 (1962).

*Arrington v. Dickerson*, 915 F.Supp. 1516, 1521 (M.D. Ala. 1996) (emphasis added).

First, Defendants argue that Plaintiffs' requested amendment should be denied based on "undue delay," because the February 10, 2003, deadline to amend passed over one year ago. (*See* Doc. # 59). Moreover, Defendants suggest that Plaintiffs' request to add a RICO claim is nothing more than a last-ditch effort to garner federal question jurisdiction. Plaintiffs, as part of their argument in favor of federal jurisdiction, note that the addition of "[a] RICO claim would unquestionably present this Court with federal question jurisdiction." (Doc. # 79). Defendants urge this court to deny Plaintiffs' request based on the Eleventh Circuit's decision in *Lowe's Home Centers, Inc. v. Olin Corporation*, 313 F.3d 1307 (11th Cir. 2002), which recognized that, "[i]t is not an abuse of discretion for a district court to deny a motion for leave to amend a complaint when such motion is designed to avoid an impending adverse summary judgment." *Lowe's*, 313 F.3d at 1315. Defendants maintain that Plaintiffs' "tardy attempt to avoid having their claims dismissed" is no different than a plaintiff seeking to amend a complaint in order to avoid an adverse summary judgment ruling. Given the expiration of the deadline to amend, the court's leniency toward Plaintiffs' earlier requests to amend their complaint, and the timing of Plaintiffs' request to amend, the court finds that Plaintiffs have had ample opportunity to plead their claims and that any further amendment at this time would only serve to unduly delay this case.

In any event, Defendants argue, and the court agrees, that Plaintiffs' proposed RICO claim is a futile amendment because it fails to state a claim as to those class members who reside in states

14

where RICO claims are barred by the McCarran-Ferguson Act, 15 U.S.C. § 1012(b),[13] and because a RICO claim is not an appropriate claim for the class action format.[14]  Accordingly, the court will deny Plaintiffs' request to amend, both because Plaintiffs have unduly delayed in seeking this fifth amendment of their claims and because any such amendment likely would be futile.

## III.    Diversity Jurisdiction

Having determined that the court lacks federal question jurisdiction over the claims in this case, the court now turns to the issue of diversity jurisdiction.  Section 1332 provides, in pertinent

---

[13] Several courts, including courts in California, Florida, New Jersey, Virginia, Pennsylvania, and Ohio, have held that the McCarran-Ferguson Act precludes RICO suits relating to racketeering within "the business of insurance." *See Doe v. Norwest Bank Minnesota, N.A.*, 107 F.3d 1297 (8th Cir. 1997); *Kenty v. Bank One, Columbus, N.A.*, 92 F.3d 384 (6th Cir. 1996); *In re Managed Care Litigation*, 185 F.Supp.2d 1310 (S.D. Fla. 2002); *American Chiropractic Association, Inc. v. Trigon Healthcare, Inc.,* 151 F.Supp.2d 723 (W.D. Vir. 2001); *Senich v. Transamerica Premier Insurance Company*, 766 F.Supp. 339 (W.D. Penn. 1990); *American International Group, Inc. v. Brutoco Engineering & Construction, Inc.*, 234 Cal. App. 3d 749 (Cal. Ct. App. 2d Dist. 1991); *see also,* 77 C.J.S. RICO § 2.

[14] At least two factors prompt this court to question whether a RICO claim is suitable for class treatment.  First, the court questions whether a class action is the superior method of adjudicating RICO claims here given that the putative class members are governed by insurance laws which differ from state-to-state, and thus the court would need to specifically analyze each state's law as part of the RICO analysis for each class member.  The court further questions whether a RICO claim satisfies the predominance and superiority requirements necessary for class action treatment under Fed. R. Civ. P. 23.  *See Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Ins. Co.*, 319 F.3d 205 (5th Cir. 2003) (holding that "individual findings of reliance necessary to establish RICO liability and damages preclude. . . (b)(3) certification . . . [because], while there may be an issue of fact common to all class members . . . that question does not predominate over the question of whether or not each member of the class suffered a RICO injury") (internal citations and quotations omitted); *Gibbs Properties Corporation v. CIGNA Corporation*, 196 F.R.D. 430 (M.D. Fla. 2000) ("The Court concludes, however, that current Eleventh Circuit precedent does not permit the Court to allow a presumption of reliance in civil RICO actions."). *Cf.*, *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006-07 (11th Cir. 1997) (finding (b)(3) certification inappropriate owing to the requirement that the court make distinct case-specific inquiries into the facts surrounding each alleged incident of discrimination).

part, "The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between. .

. citizens of different States." 28 U.S.C. § 1332.

Both Plaintiffs and Defendants agree that complete diversity exists in this action.[15]   (Docs.

# 78, 79). Both sides also concede that there *is* some question as to whether Plaintiffs' claims in this

case meet the amount in controversy requirement,[16] although the parties ultimately maintain that the

threshold amount is satisfied. In fact, Plaintiffs and Defendants both have expressed a desire to

remain in federal court. Under these circumstances, the Eleventh Circuit cautions that, "[b]ecause

jurisdiction cannot be conferred by consent, the district court should be leery of any stipulations the

parties offer concerning the facts related to jurisdiction. Given that the parties share the goal of

having this case decided in federal court, the district court should be especially mindful of its

---

[15] Plaintiffs Chester and Rebecca Browder are citizens of the State of Alabama. Defendant H & R Block, Inc. is a Missouri corporation with its principal place of business in Missouri. Defendant H & R Block Group, Inc. is a Delaware corporation with its principal place of business in The Bahamas. Defendant H & R Block Tax Services, Inc. is a Missouri corporation with its principal place of business in Missouri. Defendant H & R Block Eastern Tax Services, Inc. is a Missouri corporation with its principal place of business in Missouri.

[16] Plaintiffs initially raised the question of federal jurisdiction at the February 5, 2004 status conference, and they note in their brief that, over the four-year span of time in which this case has been pending, Eleventh Circuit law governing the requisite amount in controversy has fluctuated greatly. (Doc. # 79 (citing *Tapscott v. MS Dealer Service Corp.,* 77 F.3d 1353, 1358-59 (11th Cir. 1996) (holding that punitive damages can aggregated in order to satisfy the amount in controversy requirement); *Cohen v. Office Depot, Inc.,* 1069, 1073-77 (11th Cir. 2000) (holding that punitive damages cannot be aggregated in a class action); *Smith v. GTE Corporation,* 236 F.3d 1292, 1305-10 (11th Cir. 2001) (allowing aggregation of equitable relief because multiple plaintiffs sought to enforce a single title or right in which they had a common and undivided interest); *Allapattah Services, Inc. v. Exxon Corp.,* 333 F.3d 1248, 1256 (11th Cir. 2003) ("[28 U.S.C. § 1367] clearly and unambiguously provides the district court with the authority in diversity class actions to exercise supplemental jurisdiction over the claims of class members who do not meet the minimum amount in controversy as long as the district court has original jurisdiction over the claims of at least one of the class representatives.")).

16

independent obligation to ensure that jurisdiction exists before federal judicial power is exercised over the merits of the case." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1273 (11th Cir. 2000). Accordingly, as outlined below, the court has examined with a critical eye the arguments presented in the parties' briefs and has determined that the Plaintiffs' claims *do not* satisfy the requisite amount in controversy.

Plaintiffs' complaint generally alleges, "The amount in controversy, under 28 U.S.C. § 1332, exceeds $75,000, exclusive of interest, costs, and attorney fees." (Docs. # 1, 11, 60 at ¶ 6).[17] The Browders seek compensatory damages, declaratory and injunctive relief, punitive damages, and statutory attorneys fees, if recoverable.

---

[17] Plaintiffs argue that, "[b]ecause the Browders are joint parties to their contracts with Defendants, it is arguable that for either one to meet this amount in controversy they must together have $150,000 in controversy, which can be composed of compensatory and punitive damages." (Doc. # 79, at 15).  Again, Plaintiffs demand that they "must be allowed under 28 U.S.C. § 1653 [] to amend the complaint to specifically make this jurisdictional allegation" and to otherwise replead their jurisdictional allegations "[i]f there [wa]s a failure to properly allege federal subject matter jurisdiction. (Doc. # 79, at 16). First, the court understands the amount in controversy analysis to inquire whether the damages of any one plaintiff meet the $75,000 amount in controversy requirement.  Plaintiffs' argument is contrary to well-established law.  Second, solely as a matter of mathematics, even assuming Plaintiffs could double their damages and attempt to exceed a jurisdictional threshold $150,000 (which they clearly cannot), it makes no difference to the calculation whether the damages, counted only once, exceed $75,000, or whether their damages, doubled, exceed $150,000.  The mathematical result is the same. Finally, as discussed in footnote 11 *supra*, this is not a case where a defective allegation prevents the court from ascertaining whether diversity jurisdiction is proper.  Rather, as the court will explain *infra*, the jurisdictional deficiency lies with the value of their potential recovery.  No allowable amendment under § 1653 can correct the potential value of Plaintiffs recovery, given that § 1653 does not permit a party to add new claims to the complaint.  Plaintiffs' jurisdictional statement, although general in substance, was not defective.  Even though the complaint did not include specific information regarding the value of the Plaintiffs' claims, the Plaintiffs' February 27, 2004 brief regarding jurisdiction did, and the court has analyzed the value of Plaintiffs' claims based upon the facts as alleged in Plaintiffs' brief on jurisdiction. (Doc. # 79). Even assuming that Plaintiffs' valuation of their case - as stated in their brief - is correct,  Plaintiffs' claims still fall short of satisfying the requisite amount in controversy.

"A plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. Generally, '[i]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.'" *Federated Mutual Ins. Co. v. McKinnon Motor*, 329 F.3d 805, 807 (11th Cir. 2003) (internal citations omitted). When a case involves a putative class of plaintiffs, such as this one, only one named plaintiff's damages must satisfy the jurisdictional requirement. *Allapattah Services, Inc. v. Exxon Corp.*, 333 F.3d 1248, 1256 (11th Cir. 2003). "[Title ] 28 U.S.C. § 1367 clearly and unambiguously provides district courts with the authority in diversity class actions to exercise supplemental jurisdiction over the claims of class members who do not meet the minimum amount in controversy as long as the district court has original jurisdiction over the claims of at least one of the class representatives." *Allapattah*, 333 F.3d at 1256. However, the court cannot aggregate the value of multiple plaintiffs' claims simply because they are joined in one lawsuit. *Leonard v. Enterprise Rent-a-Car*, 279 F.3d 967, 974 (11th Cir. 2002).[18] Accordingly, the relevant inquiry is whether one of the Browders has in excess of $75,000 in controversy,

---

[18] None of the four types of relief sought by Plaintiffs in this case can be aggregated. First, although aggregation of compensatory damages may be appropriate "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest," *Zahn v. International Paper Co.*, 414 U.S. 291, 294 (1973), that is not the case here where the claims for compensatory damages arose from each class member's individual agreement with Block for tax preparation services and/or participation in the POM Program. Similarly, the equitable relief sought by Plaintiffs is the "equivalent of money damages" and is not properly aggregated for jurisdictional purposes. *Campbell v. General Motors Corp.*, 19 F.Supp.2d 1260, 1267 (N.D.Ala. 1998) (citing *Upp v. Mellon Bank, N.A.*, 510 U.S. 964 (1973) (refusing to aggregate equitable relief where "virtually all the relief sought is remedial by money damages.")). With respect to punitive damages, the Eleventh Circuit has held that "for amount in controversy purposes, a class punitive damages claim must be allocated *pro rata* to each class member." *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1074 (11th Cir. 2000). Finally, even if attorneys fees are recoverable under the relevant statutes, any attorneys fees must be attributed *pro rata* among all of the class members, resulting in a relatively small sum for each member. *See Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1275 n.20 (11th Cir. 2000).

18

exclusive of interest and costs, and without aggregating compensatory damages, injunctive relief, potential punitive damages, or attorneys fees.[19]

Although the Eleventh Circuit's *Allapattah* decision instructs that, in class action cases, only one *named* plaintiff's damages must satisfy the jurisdictional amount, Defendants argue instead that this court's jurisdictional analysis should focus on an *unnamed* plaintiff's damages – specifically any unnamed plaintiff who resides in Mississippi. Apparently, the only reason Defendants encourage reliance on the damages of an unnamed Mississippi plaintiff (the named Plaintiffs both reside in Alabama) is because Defendants believe this entitles them to the benefit of favorable Fifth Circuit law permitting aggregation of punitive damage claims. *Cf. Allen v. R & H Oil and Gas Co.*, 63 F.3d 1326 (5th Cir. 1995) (allowing aggregation of punitive damages in putative classes in Mississippi), *with Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1074 (11th Cir. 2000) (rejecting the aggregation approach for punitive damages). This argument is flawed. The Eleventh Circuit has not given this court any indication that it can rely on the damages of an *unnamed*, putative class plaintiff for jurisdictional purposes, and the recent *Allapattah* decision may well pretermit that approach. In fact, Defendants' only support for their approach is the speculation of a Middle District of Florida court, relying on pre-*Allapattah* case law, that, "if confronted with the issue, the Eleventh Circuit would find that the jurisdictional amount in controversy could be satisfied by the claims of the unnamed Plaintiff." (Doc. # 78, citing *Forest v. Penn Treaty American Corporation*, 270 F.Supp.2d 1357, 1365-66 (M.D. Fla. 2003)). The outdated conjecture of another district court is not sufficient to

---

[19] Although the court will analyze the value of any potential compensatory damages, equitable relief, and punitive damages, *see infra* Sections III A-B, the court finds no indication that any small, pro rata recovery of attorneys fees would "bump" the Browders' recovery over the jurisdictional amount, and the court will therefore not analyze attorneys fees in depth.

overcome the suggestion of *Allapattah* that this court should look to damages claimed by a named

Plaintiff.  Moreover, the Defendants cannot have it both ways.  They cannot, for purposes of

complete diversity, ask the court to look only at the resident-citizenship of named plaintiffs, but then

for purposes of the amount in controversy ask the court to look only at the damages of unnamed

plaintiffs.  Finally, the class of Plaintiffs in this case is merely putative; the court has not yet reached

class certification issues.  Thus, Defendants' argument - that the court should look to the damages

of hypothetical class members who possibly might reside in Mississippi - puts the cart before the

horse.  "[I]f there are such class members, their existence must be demonstrated not supposed.

Jurisdiction cannot be established by a hypothetical." *Morrison v. Allstate Indem. Co.*, 228 F.3d

1255, 1273 (11th Cir. 2000).  Accordingly, the court will look to the compensatory, equitable, and

punitive relief sought by the named Plaintiffs, as representatives of the putative class of unnamed

Plaintiffs.

### A.    Compensatory Damages and Equitable Relief

There is no dispute that the compensatory damages sought by the Browders, combined with

the value of their requested equitable remedies, do not approach the $75,000 threshold for diversity

jurisdiction.[20]  The Plaintiffs have alleged state law claims for breach of contract, unjust enrichment,

and violations of deceptive trade practices and seek the following compensatory damages and

equitable relief:

(1) the value of the breach of the Guarantee promise to reimburse any interest and

---

[20] Even assuming that this court could permissibly look to the damages of an *unnamed*
putative class member to satisfy the amount in controversy, there is no indication that the
compensatory damages of any unnamed Plaintiff would approach the $75,000 threshold either.
Although the exact amount recoverable for each unnamed Plaintiff is unknown, the amounts are
undoubtedly small as evidenced by the actual damages of the named Plaintiffs.

penalties on additional taxes assessed against because of "any error" in the return,

(2) the value of the breach of the Guarantee promise to have a representative appear at the audit and explain how the tax return was prepared,

(3) the total amount paid for tax preparation services,

(4) the value of the breach of the POM Program promise to reimburse additional taxes owed on a return prepared by Defendants, and

(5) statutory damages available for violations of certain states' insurance licensing statutes and consumer protection/deceptive trade practices statutes.

(Docs. #1, 11, 60, 79).

Although the Plaintiffs seek statutory damages authorized by state deceptive trade practices acts, the Browders cannot maintain a deceptive trade practices class action because Alabama law proscribes it. Alabama Code § 8-19-10 establishes a private right of action for a violation of deceptive trade practices and § 8-19-10(a)(2) allows for treble damages in the court's discretion. Ala Code § 8-19-10. However, the statute *prohibits* consumers from bringing class actions based on deceptive trade practices. Ala. Code § 8-19-10(f). "Although consumers are allowed to pursue their individual actions, class relief is reserved for the office of the attorney general or a district attorney." *Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998). Moreover, the Browders cannot base their class claims on the deceptive trade practices statute of another state because that would circumvent the clear intent of the Alabama legislature. *Ex parte Exxon Corp.*, 725 So. 2d at 933. Thus, because the Browders have no statutory authority to assert a class deceptive trade practices action, the court cannot consider in the jurisdictional equation any potential damages for violations of those acts.

Additionally, when declaratory and injunctive relief is sought, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Washington*

*State Apple Advertising Comm'n*, 432 U.S. 333, 345 (1977); *see also Occidental Chemical Corp. v. Bullard*, 995 F.2d 1046, 1047 (11th Cir. 1993). In this Circuit, the value of the equitable relief is measured from the perspective of the monetary benefit to the plaintiff, not from the perspective of cost to the defendant. *Ericsson GE Mobile Communications, Inc. v. Motorola Communications*, 120 F.3d 216, 220-21 (11th Cir. 1997). Thus, this court will analyze the equitable relief sought by Plaintiffs according to the value of its monetary benefit. To the extent that any benefit from a particular type of injunctive relief is "too speculative and immeasurable to satisfy the amount in controversy requirement," *Ericsson*, 120 F.3d at 221-222, the court cannot include that relief in the jurisdictional equation.

According to Plaintiffs' brief on federal jurisdiction, the Browders - joint parties to the contract with Block - seek a total of $1427 in compensatory damages which is comprised of $223, the total amount of tax preparation fees paid, and $1204, the amount of the POM program claim denied by Block. Even assuming that the named Plaintiffs recover the full amount of compensatory damages sought, their recovery of $1427 falls far short of the $75,000 threshold.

**B.    Punitive Damages**

Plaintiffs argue that, "[g]iven $1,427 in compensatory damages, the Browders would only need to be awarded $73,573 in punitive damages to reach the jurisdictional amount in controversy. Although the requested punitive to compensatory damages ratio of 52:1 is admittedly high, it is *not* foreclosed by the due process controls on punitive damages established by the Supreme Court." (Doc. # 79) (emphasis in original). Plaintiffs' analysis is flawed, both because the 52:1 ratio is not permissible and because this case does not have the potential for such a large punitive award.

The double-digit ratio needed in this case to satisfy the jurisdictional threshold is not far from

22

the triple-digit ratio recently *prohibited* by the Supreme Court in *State Farm Mut. Automobile Ins.*
*Co. v. Campbell,* 123 S.Ct. 1513 (2003). The Supreme Court made clear that, although it was not
imposing a "bright-line ratio which a punitive damage award cannot exceed, . . .in practice, *few*
*awards exceeding a single-digit ratio* between punitive and compensatory damages will satisfy due
process." *Campbell*, 123 S.Ct. at 1524 (emphasis added). Those "few awards" are reserved for cases
in which "a particularly egregious act has resulted in only a small amount of economic damages."
*Campbell,* 123 S.Ct. at 1524. There is no indication that this case falls into the "particularly
egregious" category such that a double-digit punitive damages ratio would be permissible.

Even if this case fell into that category, and even under pre-*Campbell* Eleventh Circuit law,
a 52:1 ratio might *still* be "grossly out of proportion to the severity of the offense." *BMW of North*
*America, Inc. v. Gore*, 517 U.S. 559, 576 (1996). In *Johansen v. Combustion Engineering, Inc.*, 170
F.3d 1320 (11th Cir. 1999), the Eleventh Circuit considered the district court's reduction of punitive
damages from a ratio of 400:1 to 100:1 in an egregious environmental pollution case. *Johansen*, 170
F.3d at 1337-1339. Although the court eventually upheld the district court's decision, it cautioned
that even the reduced ratio was "gross enough to 'raise a suspicious judicial eyebrow.'" 170 F.3d at
1338 (citing *Gore*). In fact, the only reason the court upheld the ratio is because the state had a
strong interest in deterring environmental pollution and curbing the "pollute and pay" policy adopted
by many large organizations. *Id.* Even without the benefit of the *Campbell* decision cautioning
against multipliers greater than single-digits, the Eleventh Circuit made clear that the 100:1 ratio
constituted the very "upper limits of the Constitution." *Id.* Certainly, post-*Campbell*, the validity
of double-digit and triple-digit ratios is dubious, at best.

Defendants also submitted a list of "large punitive damage verdicts in Alabama" in an effort

23

to demonstrate that this case could generate a large punitive damage award.  With the exception of one bad faith claim brought in federal court, Defendants' list is comprised entirely of state court verdicts, most of which are general verdicts with no ratio indicated.  (Doc. # 78, at Ex. A).  In the one federal case cited by Defendants, the ratio of punitive damages to compensatory damages was only 2:1, far afield from the 52:1 necessary to reach the jurisdictional threshold in this case.  The court finds no evidence to suggest that any permissible, potential punitive damage recovery would exceed $75,000 in this case, even when combined with the potential compensatory recovery.

Accordingly, it appears to a legal certainty that neither the named Plaintiffs nor any single putative class member, as represented by the named Plaintiffs, stand to recover more than $75,000 in actual damages, exclusive of interest and costs, from this litigation; therefore, the court lacks diversity jurisdiction over the claims in this case.

IV.     **Conclusion**

For the reasons stated above, this court lacks subject matter jurisdiction over the claims in this case because neither federal question or diversity jurisdiction exists.  Therefore, this case is due to be dismissed.  A separate order will be entered.

**DONE** and **ORDERED** this _____30th_____ day of April, 2004.


_____
R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE